AMALIA CALIMANO DÍAZ, demandante y recurrente, v. FRANCISCO ROVIRA CALIMANO, ETC., demandado y recurrente; YVONNE FANTON BENARD, demandada y recurrida.

*Número:* R-81-23 *Resuelto:* 12 de enero de 1983

*Francisco G. Bruno Rovira,* de *Hartzell, Ydrach, Mellado, Santiago & Pérez,* abogado de los recurrentes; *Santiago Polanco Abreu,* abogado de la recurrida.

EL JUEZ ASOCIADO SEÑOR DÁVILA emitió la opinión del Tribunal.

Don Fernando Calimano Díaz falleció el 17 de diciembre de 1964. Al momento de su muerte, y desde noviembre de 1933, estaba casado con doña Yvonne Fanton Benard bajo el régimen de separación de bienes. No le sobrevivieron ascendientes ni descendientes.

A su muerte, don Fernando había expresado su última voluntad en un testamento otorgado el 1ro de junio de 1962. Se inició entonces por la hermana de don Fernando, doña Amalia Calimano Díaz, acción para anular dicho testamento. Prevaleció en la acción porque los testigos instrumentales no eran vecinos del lugar del otorgamiento —Río Piedras— sino del domicilio del testador —Guayama. Pero véase *Rivera Pitre* v. *Galarza Martínez,* 108 D.P.R. 565 (1979). Al anularse el testamento otorgado en 1962 cobró vigencia y vino a prevalecer uno previo otorgado en abril de 1955. En éste don Fernando había instituido como heredera universal a doña Amalia. Véase *Calimano Díaz* v. *Calimano,* 103 D.P.R. 123 (1974). Había dispuesto, además, en dicho testamento que sus herederos pagarían con cargo a los bienes de su herencia que se adjudicaran una renta vitalicia de trescientos dólares ($300) mensuales para beneficio de su esposa. Asimismo, legó a ésta la suma de $10,000. A la fecha de su fallecimiento, el capital de don Fernando se estimó en $475,621.32 para propósito contributivo.

Pasó el tiempo y doña Amalia pagó a doña Yvonne sumas varias a modo de "anticipos" de la participación de

ésta en la herencia. Al 20 de diciembre de 1978 dichos "anticipos" sumaban $163,604.23. Decidió entonces doña Amalia capitalizar los derechos de doña Yvonne sobre el caudal relicto. Toda vez que "no anticipaba poder llegar a un acuerdo" con ésta, presentó la solicitud correspondiente ante el Tribunal Superior. Véase el Art. 765 del Código Civil, 31 L.P.R.A. sec. 2415. ([1])

El Tribunal Superior, Sala de Guayama, dictó sentencia en que estimó que para liquidar la participación de doña Yvonne en la herencia, debía doña Amalia satisfacerle la suma de $305,420.14. Para alcanzar dicha cantidad, procedió de la siguiente manera.

En primer lugar, determinó cuánto se le adeudaba a doña Yvonne por el período de tiempo transcurrido entre la muerte del causante y el momento de solicitarse la capitalización de sus derechos legales y testamentarios. Para esos propósitos, estimó el valor de los derechos de doña Yvonne a la muerte de don Fernando; o sea, estimó cuánto hubiera recibido ella si doña Amalia hubiese decidido capitalizar los derechos viduales al abrirse la sucesión de don Fernando. Dicho valor ascendió a $115,924.83. ([2]) El tribunal tomó esta

---

([1]) Dispone así:

"Los herederos podrán satisfacer al cónyuge su parte de usufructo, asignándole una renta vitalicia, o los productos de determinados bienes, o un capital en efectivo, procediendo de mutuo acuerdo, y, en su defecto, por virtud de mandato judicial.

"Mientras esto no se realice, estarán afectos todos los bienes de la herencia al pago de la parte de usufructo que corresponda al cónyuge viudo."

([2]) El cómputo se hizo del siguiente modo: doña Yvonne tenía, a la muerte de don Fernando, una expectativa de vida de 17.9 años. Así pues, el tribunal determinó que el valor a diciembre de 1964 de una renta de $300 mensuales por 17.9 años era $30,181.84.

Asimismo estimó qué valor tenía a esa fecha el derecho de la viuda sobre el caudal relicto. El caudal estaba valorado en $475,621.32. Correspondía a doña Yvonne la mitad del mismo ($237,810.66) en calidad de usufructo. Tomando como rédito razonable un 6% anual ($14,268.64), el tribunal estimó el valor, a 1964, del derecho de doña Yvonne sobre el mismo en $119,626.05.

Sumados el valor de la renta vitalicia, el valor del derecho vidual sobre el caudal relicto y el legado de $10,000, obtuvo la cantidad de $159,807.89. Final-

suma, que llamó "principal", y determinó el rendimiento que doña Yvonne hubiese obtenido de ella desde 1964 hasta 1978 a base de un 6% anual como rédito. Durante esos catorce años el capital hubiese aumentado a $262,094.91. De esta última cantidad el tribunal restó los $163,604.23 que doña Yvonne había recibido de la heredera durante los 14 años de viudez, concluyendo, por tanto, que al momento de la conmutación doña Amalia adeudaba a la viuda $98,490.68.

Acto seguido, procedió el tribunal a calcular el valor de los derechos futuros de doña Yvonne sobre el caudal relicto a la fecha de la conmutación requerida. Con ese fin tomó el valor de los bienes al 20 de diciembre de 1978 ($930,670) y estimó que la expectativa de vida de doña Yvonne a partir de esa fecha era de 8.6 años. La valoración ascendió a $206,929.46.([3])

Condenó, pues, el tribunal a doña Amalia a pagar a doña Yvonne la suma de $305,420.14, representativa de la deuda de $98,490.68 pendiente al momento de pedirse la conmutación, más los $206,929.46 equivalentes a dicha conmutación. Insatisfecha, la heredera recurrió ante nos, imputándole al tribunal sentenciador la comisión de varios errores. También acudió el administrador judicial, quejándose de que la corte de instancia nada ha provisto con respecto a su solicitud de que se concluya la administración luego de aprobarse las cuentas que se han rendido. Decidimos revisar.

El grueso de los errores que la heredera recurrente, doña Amalia, le imputa al tribunal sentenciador se refieren

mente, el tribunal restó el monto de la contribución sobre herencias correspondiente a doña Yvonne ($43,882.76) y obtuvo la cantidad de $115,924.83 (*Exhibit* 12.)

([3]) La viuda tiene derecho de usufructo sobre la mitad de los bienes ($465,335) que, produciendo un 6% de rédito cada año ($27,920), representa un valor de $183,295.46. Véase el Art. 764 del Código Civil, 31 L.P.R.A. sec. 2414.

A esta última suma añadió el tribunal el valor a diciembre de 1978, de la renta vitalicia de $300 mensuales que por 8.6 años debía recibir doña Yvonne ($23,634). La suma de estas dos partidas arroja el saldo de $206,929.46.

a la manera en que éste calculó los derechos de la viuda recurrida, doña Yvonne.

Uno de los señalamientos tiene, no obstante, un carácter más sustantivo y lo discutiremos primero. Mediante dicho apuntamiento se cuestiona la propiedad jurídica de acumular la cuota vidual usufructuaria ordenada por ley con los derechos testamentarios dispuestos por don Fernando a favor de doña Yvonne. La heredera argumenta que los mencionados derechos deben fundirse y que las gracias testamentarias dispuestas por el causante a beneficio de su viuda deben imputarse a la legítima de ésta, correspondiéndole, sólo adicionalmente, el complemento que sea de rigor para alcanzar el derecho legal. La heredera tiene razón sólo con respecto a la renta vitalicia. El reciente desarrollo habido en la doctrina interpretativa de nuestro Código Civil, así como nuestras expresiones jurisprudenciales, confirman definitivamente su postura. Veamos.

 Como es natural en la interpretación de los testamentos prevalece la voluntad del testador, *Vda. de Sambolín* v. *Registrador*, 94 D.P.R. 320, 327–328 (1967). Ahora bien, en defecto de directriz de parte del *de cujus* y tratándose del legitimario, el legado o manda hecho a favor de éste se tiene por hecho a cuenta de su legítima, por lo que sólo puede reclamar el legitimario "el complemento de la misma". Art. 743 del Código Civil, 31 L.P.R.A. sec. 2369; [4] *Cortés* v. *Cortés*, 73 D.P.R. 693, 705–706 (1952). No obstante lo anterior, y negándole naturaleza de verdadera legítima a la cuota usufructuaria del cónyuge, un reputado sector doctrinal consideró que en ausencia de expresión en contrario por el testador, la solución debía ser la opuesta y debía acumularse la cuota legal con el legado testamentario. Véanse, *i.e.*, Vallet de Goytisolo, *Imputación de legados*

[4] Dispone así:

"El heredero forzoso a quien el testador haya dejado por cualquier título menos de la legítima que le corresponda, podrá pedir el complemento de la misma."

*otorgados a favor de legitimarios*, 32 Rev. Der. Privado 315, 343–345 (1948); J. Puig Brutau, *Fundamentos de derecho civil*, Barcelona, Ed. Bosch, 1963, T. V, Vol. III, págs. 157–158. Estos prestigiosos exponentes han sido persuadidos de que la solución contraria es en verdad la correcta. Así pues, admite hoy el propio Vallet de Goytisolo el error de su anterior postura. Al aceptar la tesis de Manuel de la Cámara Álvarez explica:

> Nosotros, una vez agotada la posibilidad de resolver la cuestión interpretando la voluntad explícita o implícita del causante, y "ante la necesidad de dar una solución", nos habíamos inclinado también a favor de la acumulación de cuota y legado partiendo de la especial naturaleza de la cuota vidual, respecto de la cual —a diferencia de las otras legítimas— pensábamos entonces que se obtenía "ope legis" por una delación legal directa de dicha cuota.
>
> Cámara Álvarez, ante este supuesto, ha rechazado tanto la acumulación de legado y cuota como la posibilidad de que el cónyuge viudo opte por aquél y por ésta, y ha afirmado que el cónyuge viudo deberá aceptar el legado —aunque sea de metálico, que se imputará a su cuota legal—, pues, cree, que "no existe un llamamiento legal autónomo a favor del cónyuge por su cuota legal usufructuaria", sino sólo subsidiario, en cuanto el valor de lo que el testador le haya asignado no cubra su cuota. Por lo cual, el criterio aplicable a los demás legitimarios, en análogo supuesto, no debe variar tratándose del cónyuge viudo. . . . [H]emos aceptado esta rectificación de Cámara a nuestra tesis de la naturaleza jurídica de la legítima vidual, por lo tanto, también aceptamos aquí su consecuencia lógica para el supuesto que estudiamos. (Escolios suprimidos.) J. Vallet de Goytisolo, *Limitaciones de derecho sucesorio a la facultad de disponer las legítimas*, 1924, T. I, Vol. 2, págs. 855–856.

En igual sentido, véase: J. Puig Brutau, *op. cit.*, 2da ed., 1977, pág. 170. En realidad, ya en *Vda. de Sambolín*, ante, pág. 330, habíamos resuelto que sólo procederá la acumulación de la cuota vidual con gracias testamentarias de otro título, de ser " aparente, a la luz de las circunstancias y dis-

posiciones testamentarias", que esa era la intención del testador.

¿Refleja el testamento que rige el presente caso esa intención de parte del testador? Creemos que no con respecto a la renta vitalicia.[5] El testador ni siquiera mencionó el usufructo viudal, bien en su institución de herederos, bien en sus mandas a beneficio de doña Yvonne. Véase Vallet de Goytisolo, *Imputación de legados otorgados*, ante, pág. 345. Advertimos, por el contrario, que la renta vitalicia dependería, *para sus comienzos*, de la disponibilidad de las rentas y créditos del caudal, es decir, que estuvo ligada a la utilidad de los bienes. Tampoco se nos apunta, ni hallamos nosotros, las circunstancias convincentes que, según apuntamos en *Vda. de Sambolín*, ante, págs. 328–329, movieron al Tribunal Supremo de España en su sentencia del 3 de junio de 1947 a determinar que procedía la acumulación. Por el contrario, el testamento de autos parece indicar que quiso don Fernando asegurarle a doña Yvonne una renta mínima durante su viudez, de monto sustancial allá para 1955, cuando fue dispuesta. Coincide su propósito con el del usufructo vidual que, naturalmente, complementará a aquélla cuando su valor la rebase.

Distinta parece haber sido la intención del testador con respecto al legado de $10,000. Surge claro su propósito de proveerle dicha suma a la viuda de inmediato y con independencia de las resultas operacionales del caudal. Resulta, pues, de su contexto testamentario, que dicho legado debe acumularse con el usufructo legal.

---

[5] Luego de hacer la institución de herederos, donde no se mencionó a doña Yvonne, el testador dispuso como sigue:

"Es mi deseo establecer para beneficio de mi antes nombrada esposa una renta vitalicia de TRESCIENTOS DOLARES ($300.00) mensuales que mis herederos pagarán con cargo a los bienes de mi herencia que se adjudiquen, comenzando el pago de dicha renta vitalicia a partir de la fecha en que puedan disponer de las rentas o réditos de mis bienes hereditarios y de igual manera lego a favor de mi propia mencionada esposa la suma de DIEZ MIL DOLARES ($10,000.00) en efectivo que mis herederos pagarán a dicha legataria preferentemente y tan pronto como puedan." (*Exhibit* 2.)

■ Hasta tanto se realiza la conmutación, el viudo es usufructuario de todos los bienes de la herencia en la porción correspondiente (la mitad en este caso) de su productividad. Art. 765 del Código Civil, 31 L.P.R.A. sec. 2415; J. L. Mezquita del Cacho, *Conmutación del usufructo vidual común*, 15 Rev. Der. Not. 213, 233–234 (1957); A. Gullón Ballesteros, *La conmutación del usufructo legal del cónyuge viudo*, 17 Anuario de Der. Civil 583, 618–619 (1964). En el presente litigio, no hubo controversia en torno a los ingresos y egresos del caudal durante los años anteriores a la solicitud de conmutación. Se estipuló, por el contrario, que "[l]as cuentas trimestrales y la cuenta final rendida por el Administrador Judicial . . . reflejan adecuadamente los ingresos y egresos de la sucesión y el inventario existente al fallecimiento del causante y el inventario actual de la herencia". (*Exhibit* 12.) Así pues, como no hay controversia en torno al beneficio generado por los bienes durante el usufructo, es lo más ajustado a derecho que se proceda, sencillamente, a determinar cuánto se le debió entregar a doña Yvonne de esos beneficios en exceso de la renta de $300 mensuales dispuesta por su marido en testamento. Se trata de una liquidación ordinaria de cuentas. No era necesario acudir a método alterno alguno para determinar las sumas que tenía derecho a devengar doña Yvonne durante la duración del usufructo. Erró el tribunal sentenciador en su proceder.(6)

■ El Tribunal Supremo de España postula la doctrina de que la apreciación del "efectivo numerario de la cuota vidual cuando . . . no exista acuerdo entre los interesados . . . [es una] cuestión de hecho [no] impugnable en

---

(6) Como vimos antes, en el escolio 2, la ilustrada sala de instancia retrotrajo la conmutación hasta la fecha de la muerte del causante y determinó cuánto debió entregársele a doña Yvonne de haberse hecho la conmutación entonces. Aparte de las deficiencias en que incurrió el tribunal recurrido al sumar todos los pagos parciales hechos a modo de "adelantos" durante 14 años de usufructo y darle el valor de dinero al 1979, la operación era innecesaria a falta de controversia sobre la realidad operacional de los bienes durante el usufructo.

casación [cuando] no se demuestra error evidente". Sentencia del 5 de noviembre de 1913, 128 Jurisprudencia Civil 597, 617; Gullón Ballesteros, *op. cit.*, pág. 610. El reclamo de error que la heredera hace con respecto a la valoración de los derechos de la viuda es en el presente caso inmeritorio. Argumenta la heredera en apoyo de su contención que el tribunal de instancia debió tomar como base para estimar la cuota vidual el valor de los bienes en 1964. Contra los argumentos de la recurrente son contundentes los adelantados por José Luis Mezquita del Cacho en la pág. 292 de la monografía que antes citamos:

> . . . nosotros nos inclinamos a la opinión de que *la determinación de la equivalencia debe hacerse con referencia al momento de la conmutación,* sin perjuicio de que el Juez introduzca cuantas modificaciones y correcciones aconseje la equidad. En primer lugar, esta solución se acomoda más a la doctrina clásica, romana, de los legados *per damnationem,* a los que se asemeja el legado legal de usufructo vidual. En segundo término, y sin perjuicio de admitir, además, toda clase de apreciaciones periciales sobre rendimientos potenciales, es evidente que la observación empírica es insuperable para conocer el margen neto de los beneficios del usufructo. En tercer lugar, esta solución es la única justa en el caso de que la evaluación se haga como capitalización, a los efectos del pago en efectivo, y resulta complejo e infundado establecer una diversidad de criterios para cada caso. (Énfasis en el original; escolio suprimido.)

No se cometió el error apuntado.

Se queja la recurrente de que el tribunal sentenciador le ordenó satisfacer en efectivo el valor conmutado del usufructo vidual. Apunta que el anteriormente citado Art. 765 del Código Civil concede a los herederos la facultad de escoger, entre las alternativas legales, aquélla que más les convenga. Concluye, por tanto, que el tribunal debió permitirle "al menos negociar con la viuda la forma de pago". No tiene razón.

■ Ha sostenido el Tribunal Supremo español que, procediendo la conmutación y ante el desacuerdo de herede-

ros y viudo, el Art. 765 del Código Civil confiere al tribunal autoridad para decidir "la forma de pago que estime más equitativa y justa de las que la ley establece". Sentencia del 28 de junio de 1962, XXIX-II Aranzadi, Repertorio de Jurisprudencia, núm. 3094, pág. 2125. Véase J. Puig Brutau, *op. cit.*, 2da ed., pág. 145. La propia heredera, que solicitó la conmutación, no proveyó al tribunal un catálogo de bienes que a su juicio fueren propios para el saldo del valor de la conmutación. Es en moción de reconsideración donde levantó por primera vez la cuestión, sin todavía apuntar qué bienes sugiere como apropiados. Más aún, el tribunal sentenciador concluyó que la viuda es señora de muy avanzada edad. Por tanto, la propuesta de la heredera de "entrar en negociaciones" claramente le perjudica. Actuó correctamente la sala de instancia a la luz del derecho aplicable y de las circunstancias del caso, al disponer que la conmutación del derecho de doña Yvonne se satisfaga en efectivo.

Pasamos a considerar la terminación de la administración judicial. Siendo evidente que las gestiones del administrador judicial en este caso serán necesarias, al menos hasta tanto se liquide la cuota vidual de doña Yvonne, el tribunal a quo actuó dentro de su prudente discreción al negarse a dar por terminada la administración. No intervenimos con su juicio.

La solución del caso de autos ha padecido ya de dilación excesiva. Este tipo de recursos, por su naturaleza, debe ser objeto de pronta solución. Gullón Ballesteros, *op. cit.*, pág. 603. En vista de lo anterior y teniendo en cuenta que sólo resta por dilucidar, primero, la liquidación de los derechos de la viuda a la luz de las cuentas indisputadas del administrador durante los años de usufructo; y segundo, el valor de su usufructo futuro, sin acumular la renta vitalicia con el mismo (véase el escolio 3), deberá el tribunal sentenciador recibir en plazo expedito la ilustración que sea necesaria

para esos fines y ajustar la sentencia correspondiente. Para que así se proceda, *se dictará la sentencia correspondiente.*

El Juez Asociado Señor Rebollo López concurre en el resultado.