EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Ángel Manuel Torres Cubano<br><br>Recurrido<br><br>v.<br><br>Sucesión de Miriam Magdalena Dómenech Rosado compuesta por Ismael H. Herrero Dómenech<br><br>Peticionarios | Certiorari<br><br>2021 TSPR 43<br><br>206 DPR _____ |

Número del Caso: CC-2019-758


Fecha: 29 de marzo de 2021


Tribunal de Apelaciones:

    Panel VI


Abogado de la parte peticionaria:

    Lcdo. Luis E. Dubón Arraiza


Abogada de la parte recurrida:

    Lcda. Elena Quintero García


Materia: Sentencia con Opinión de Conformidad.


Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Ángel Manuel Torres Cubano

    Recurrido

        v.

Sucesión de Miriam Magdalena Dómenech Rosado compuesta por Ismael H. Herrero Dómenech       CC-2019-0758       *Certiorari*

    Peticionarios


SENTENCIA

En San Juan, Puerto Rico, a 29 de marzo de 2021.

Evaluado y expedido el recurso de *certiorari* presentado por la parte peticionaria, se revoca la sentencia del Tribunal de Apelaciones y se reinstala la sentencia que emitió el Tribunal de Primera Instancia.

Lo acordó el Tribunal y certifica el Secretario del Tribunal Supremo. La Jueza Presidenta Oronoz Rodríguez emitió una Opinión de Conformidad a la que se une el Juez Asociado señor Colón Pérez. El Juez Asociado señor Estrella Martínez emite la siguiente expresión de conformidad a la que se unen los Jueces Asociados señores Martínez Torres y Feliberti Cintrón:

> "Esta controversia requería que el por ciento de interés base para calcular la renta anual de la conmutación de la cuota viudal usufructuaria. Puesto que, al momento de iniciada la controversia de autos, el estado de derecho reconocía el seis por ciento (6%) como la tasa de interés aplicable, coincido con el dictamen de este Tribunal.
>
> No obstante, tengo reservas con que este por ciento de interés continúe rigiendo en nuestro ordenamiento. Esto, pues, la Asamblea Legislativa enmendó lo que, a todas luces, fue

la base jurídica en la que este Tribunal fundamentó en su momento la validación de tal por ciento de interés en este tipo de casos. Me explico.

Como reseña la Opinión de conformidad emitida por la Jueza Presidenta Oronoz Rodríguez, en Vda. De Giol v. Giol García, 98 DPR 227, 234 (1969) y, posteriormente, en Calimano Díaz v. Rovira Calimano, 113 DPR 702 (1983), este Tribunal avaló que el principal del usufructo viudal produjera una renta anual a razón del seis por ciento (6%) de interés. Sin embargo, preciso destacar que en ninguno de estos casos identificamos su fundamento jurídico. Ante ello, el tratadista Efraín González Tejera aclaró que el uso de tal por ciento de interés respondió a que "era entonces y es todavía el interés anual que fija la ley". E. González Tejera, Derecho de Sucesiones, Tomo 1, Ed. UPR, 2001, pág. 121. Es decir, en aquel entonces, el Artículo 1061 del Código Civil, disponía que "[m]ientras que no se fije otro por el Gobierno se considerará como legal el interés del seis por ciento (6%) al año". Código Civil de Puerto Rico de 1930, 31 LPRA ant. sec. 3025.

Ahora bien, luego de que se suscitara la controversia de autos en el año 2015, el artículo precitado fue enmendado. Así, con la aprobación de la Ley Núm. 98-2016, se modificó el texto de dicho articulado de la siguiente forma: "[s]e considerará como legal el interés que fije la Oficina del Comisionado de Instituciones Financieras. . .". Íd. **Nótese que la enmienda introducida por esta ley eliminó toda referencia a que se consideraría el seis por ciento (6%) anual como el interés legal.**

Posteriormente, con la aprobación del nuevo Código Civil en el 2020, se enmendó nuevamente la disposición antes citada. Ahora, el Artículo 1169 del nuevo Código Civil, equivalente al ya derogado Artículo 1061, dispone que "[s]e considerará legal el interés que fije la Oficina del Comisionado de Instituciones Financieras para el pago de sentencias judiciales". Como puede verse, la Asamblea Legislativa ha modificado en dos (2) ocasiones el precepto legal en el cual se fundamentó nuestro razonamiento respecto al uso del seis por ciento (6%) de interés como base para calcular la renta

anual para la conmutación de la cuota viudal usufructuaria.

Toda vez que esta controversia inició en el 2015 y que, en ese entonces, todavía regía en nuestro ordenamiento jurídico que el interés legal aplicable sería el seis por ciento (6%), estimo apropiado la aplicación de tal tasa de interés en la resolución del caso de epígrafe. No obstante, resalto que su uso no debe ser perpetuado, máxime cuando, tal y como hemos señalado, el fundamento jurídico empleado por este Tribunal en Vda. De Giol v. Giol García, supra, y en Calimano Díaz v. Rovira Calimano, supra, ha sido modificado desde entonces y, por consiguiente, no corresponde al estado de derecho actual.

Por los fundamentos anteriormente esbozados, estoy conforme con la Sentencia que emite hoy este Tribunal".

José Ignacio Campos Pérez
Secretario del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Ángel Manuel Torres Cubano<br>Recurrido<br>v.<br>Sucesión de Miriam Magdalena Dómenech Rosado compuesta por Ismael H. Herrero Dómenech<br>Peticionarios | CC-2019-0758 | *Certiorari* |

La Jueza Presidenta Oronoz Rodríguez emitió una Opinión de conformidad a la que se une el Juez Asociado señor Colón Pérez.

En San Juan, Puerto Rico, a 29 de marzo de 2021.

En la controversia ante nosotros correspondía determinar cuál es el factor de rédito o interés a base del cual se debe calcular la renta anual para la conmutación de la cuota viudal usufructuaria. Por entender que no debemos apartarnos de un precedente limitado y bien asentado en nuestro ordenamiento jurídico relacionado a la figura del usufructo viudal que reconocía el antiguo Código Civil hasta el 2020, estoy conforme con la sentencia que hoy emitimos.

I

La Sra. Miriam M. Herrero Dómenech (causante) contrajo matrimonio con el Sr. Ángel Manuel Torres Cubano (señor Torres Cubano o recurrido). La pareja no

procreó hijos, por lo que la causante falleció sin descendientes e intestada. Dejó como únicos herederos a su madre, la Sra. Miriam Magdalena Dómenech Rosado (señora Dómenech Rosado), y al señor Torres Cubano en cuanto a su derecho de usufructo.

El 28 de mayo de 2015, el señor Torres Cubano presentó una demanda de liquidación de cuota usufructuaria contra la madre y heredera de la causante, la señora Dómenech Rosado. Esta última contestó la demanda oportunamente. No obstante, falleció el 5 de mayo de 2017 y dejó como único heredero a su hijo, el Sr. Ismael H. Herrero Dómenech (señor Herrero Dómenech o peticionario). Después de que el Tribunal autorizó la sustitución de parte, el señor Herrero Dómenech se convirtió en el demandado. La controversia entre las partes se redujo al monto que le corresponde al señor Torres Cubano por su derecho de usufructo viudal.

Luego de varios trámites procesales, los cuales incluyeron la presentación de informes periciales que establecieron el valor de la conmutación conforme al caudal hereditario, el señor Herrero Dómenech presentó una *Moción solicitando determinación judicial*. Solicitó que se determinara que el interés aplicable al cómputo de la conmutación del usufructo viudal no era de 6%, sino uno ajustado a los valores disponibles en el mercado.

El señor Herrero Dómenech arguyó que, según la jurisprudencia, el rédito de 6% del usufructo era la renta anual que el cónyuge supérstite habría de recibir como

beneficio por su cuota viudal.[1] No obstante, argumentó que la jurisprudencia no justifica o establece razón alguna para aplicar ese interés. Siendo así, sostuvo que continuar utilizando ese porciento sin fundamento jurídico alguno va en contra de las realidades del mercado financiero de Puerto Rico. A modo de ejemplo, el peticionario expuso que -para ese momento- las tasas de interés aplicables a cuentas de ahorro y de depósito fluctuaban hasta un 2.75%. De esa manera, solicitó que no se calculara la renta anual del usufructo a base de un 6% y que, en su lugar, se utilizara el porciento de interés que correspondiera según las fluctuaciones económicas.

Por su parte, el señor Torres Cubano presentó una *Réplica a moción radicada por la parte demandada sobre solicitud de determinación judicial*. En esta se opuso a los planteamientos del señor Herrero Dómenech. Utilizó como fundamento que, conforme a la jurisprudencia, el rendimiento anual para efectos del usufructo viudal es y siempre ha sido 6%. Puntualizó que ese interés se pautó en Vda. de Seraballs v. Abella Hernández, infra, y se confirmó en casos posteriores. Así, alegó que ese interés constituía el precedente vigente aplicable a la conmutación del usufructo viudal. En una *Dúplica a réplica de parte demandante a "Moción solicitando determinación judicial"*, el señor Herrero Dómenech reiteró sus argumentos anteriores.

Luego de evaluar los escritos de ambas partes, el Tribunal de Primera Instancia emitió una Resolución en la que determinó

---

[1] Véase Vda. de Seraballs v. Abella Hernández, 90 DPR 368 (1964); Vda. de Giol v. Giol García, 98 DPR 227 (1969); Calimano Díaz v. Rovira Calimano, 113 DPR 702 (1983).

que correspondía aplicar el 6% de interés al calcular la conmutación del usufructo viudal.[2] Fundamentó tal dictamen en que ese porcentaje es el que han aplicado los tribunales en Puerto Rico históricamente. El foro primario expuso que la fórmula jurídica que se estableció en el caso Vda. De Seraballs v. Abella Hernández, infra -reiterada en Vda. De Giol v. Giol García, infra y posteriormente en Calimano Díaz v. Rovira Calimano, infra- contempla un interés del 6%. Indicó que incluso el peticionario reconoce la norma establecida por la jurisprudencia en este asunto. En vista de lo anterior, el foro primario concluyó que no le corresponde adoptar un criterio distinto al que el Tribunal Supremo validó y cualquier cambio sobre ese interés le corresponde a la Asamblea Legislativa.

Inconforme, el señor Herrero Dómenech presentó un certiorari en el Tribunal de Apelaciones. En este cuestionó que el Tribunal de Primera Instancia aplicara automáticamente el interés de 6% para calcular la renta anual del usufructo viudal. En esencia, repitió que, aunque la jurisprudencia establece y utiliza el 6%, no hay explicación alguna o justificación empírica para aplicar dicho factor de rendimiento. Además, planteó la importancia de considerar un interés que responda a las fluctuaciones en el mercado.

Por su parte, el señor Torres Cubano presentó su Réplica a petición de certiorari y en cumplimiento de orden. Este se remitió a sus planteamientos sobre que la fórmula jurídica que

---

[2] La Resolución se emitió el 24 de mayo de 2019 y se notificó el 29 de mayo de 2019.

contempla el rédito anual de 6% es el precedente vigente y aplicable a la conmutación del usufructo viudal. Por lo mismo, solicitó que el foro apelativo intermedio confirmara la Resolución recurrida.

El Tribunal de Apelaciones dictó una Sentencia en la que revocó al foro primario. Determinó que, si bien la jurisprudencia utiliza reiteradamente el 6% de rédito en esta situación, la realidad es que ningún caso detalla el raciocinio para aplicar el porcentaje referido. Es decir, que no existe fundamento jurídico para aplicar automáticamente un rédito de 6% anual al usufructo viudal. En consecuencia, indicó que el peticionario tenía razón en cuanto a que había que cuestionar la base empírica del 6% de rédito y su relación con la realidad del mercado financiero. En síntesis, el foro apelativo intermedio resolvió que para obtener la renta anual del usufructo viudal se debe utilizar la tasa de interés fijo pagadera sobre la cuantía de sentencias judiciales que establece la Oficina del Comisionado de Instituciones Financieras (OCIF). Lo anterior, ya que conforme al Reglamento 78-1 de 25 de octubre de 1988 (Reglamento 78-1) esas tasas fijas van acorde con el mercado y aplican tanto a casos del Estado como entes privados. Por último, el Tribunal de Apelaciones resolvió que la conmutación del usufructo viudal en este caso se debía hacer a base de un rédito de 6.25%, el cual, conforme a la OCIF, correspondía al momento que se presentó el recurso de *certiorari*.

Aún inconforme, el señor Herrero Dómenech compareció ante nosotros mediante un recurso de *certiorari* en el cual señaló los errores siguientes:

1. Erró el Tribunal de Apelaciones en su Sentencia, al determinar que el interés aplicable en la fórmula de conmutación del usufructo viudal es la tasa determinada por la Oficina del Comisionado de Instituciones Financieras y no una tasa a base de las fluctuaciones del mercado.

2. Erró el Tribunal de Apelaciones en su Sentencia al determinar que el interés aplicable en la fórmula de conmutación del usufructo viudal en el caso de marras, es la tasa fijada por la Oficina del Comisionado de Instituciones Financieras a la fecha en que se presentó el recurso de certiorari de Herrero ante dicha superioridad y no a la fecha de la conmutación.

**II**

### A. *El usufructo viudal*

Se conoce como la legítima aquella porción de bienes que el testador no puede disponer por haberse reservado a unos herederos determinados por virtud de ley. Art. 735 del Código Civil, 31 LPRA sec. 2361. Al amparo del Código Civil vigente cuando se trabó esta controversia, son legitimarios del causante sus descendientes y en ausencia de estos sus ascendientes. Art. 736 del Código Civil, 31 LPRA sec. 2362. Asimismo, se reconoce al viudo o la viuda como un heredero forzoso, aunque este tendrá derecho a una cuota en usufructo. Íd.; Art. 761 del Código Civil, 31 LPRA sec. 2411; Clavelo Pérez v. Hernández García, 177 DPR 822, 837 (2010). En otras palabras, el usufructo viudal es la legítima que la ley separa para el cónyuge viudo. Clavelo Pérez v. Hernández García,

supra, pág. 838; <u>Vda. de Sambolín v. Registrador</u>, 94 DPR 320, 324 (1967).

La cuota que le corresponde en usufructo al cónyuge supérstite dependerá de con quién este concurre al llamado hereditario. Cuando el causante o la causante no deja descendiente alguno, pero sí ascendientes, el viudo o la viuda tendrá derecho a la tercera parte de la herencia en usufructo. Art. 763 del Código Civil, 31 LPRA sec. 2413. En ese caso, el tercio se sacará de la mitad libre. <u>Íd.</u>

A tono con lo anterior, los herederos podrán satisfacer al cónyuge su parte de usufructo, asignándole: (1) una renta vitalicia, (2) los productos de determinados bienes, o (3) un capital en efectivo. Art. 765 del Código Civil, 31 LPRA sec. 2415. Mientras lo anterior no se realice, todos los bienes de la herencia están afectos al pago de la parte de usufructo que le corresponda al cónyuge supérstite. <u>Íd.</u> De acuerdo con lo anterior, el usufructo viudal se puede conmutar de tres maneras. La tercera modalidad, consiste en sustituir el derecho de usufructo por su equivalente en capital en efectivo. Así, se puede decir que una de las maneras de conmutar el usufructo viudal es capitalizándolo. Esta modalidad implica que los herederos satisfacen al cónyuge supérstite, en un solo pago, el valor total de su derecho.[3] Por eso, su efecto mayor es que extingue el derecho de usufructo.

Capitalizar el usufructo viudal implica llevar a cabo un cómputo matemático a base de ciertos factores establecidos en

---

[3] E. González Tejera, *Derecho de Sucesiones*, Tomo 1, Ed. UPR, 2001, pág. 123.

el ordenamiento jurídico. Para determinar la equivalencia de este derecho de usufructo en capital efectivo se han elaborado unos pasos. El profesor González Tejera explica que primero se utiliza el valor del caudal hereditario para determinar la cantidad que -en concepto de usufructo- le corresponde al cónyuge supérstite, de acuerdo con las normas del Código Civil y la jurisprudencia.[4] **Una vez se calcula el principal del usufructo, entonces se determina una renta anual a base del seis por ciento de interés.**[5] Luego, se obtiene el valor presente de esa renta anual a base de una fórmula que contempla una tasa de interés de descuento y la expectativa de vida del cónyuge supérstite.[6] El rédito de 6% para la renta anual no se debe confundir con la tasa de descuento que se utiliza para obtener el valor presente.

Finalmente, sobre el momento en que se deben valorizar los bienes del caudal para estimar la cuota viudal usufructuaria, en Calimano Díaz v. Rovira Calimano, 113 DPR 702 (1983), indicamos "que la determinación de la equivalencia debe hacerse con referencia al momento de la conmutación, sin perjuicio de

---

[4] Íd., pág. 121.
[5] Íd., págs. 121 y 123. El profesor González Tejera infiere que la razón del 6% es "que era entonces […] el interés anual que fija la ley", sin embargo, ese fundamento no surge de la jurisprudencia. De todas formas, al momento de los hechos de este caso, el interés legal continuaba siendo el 6%. Véase el Art. 1061 del Código Civil, 31 LPRA sec. 3025 ("Mientras que no se fije otro por el Gobierno se considerará como legal el interés del seis por ciento (6%) al año"). Actualmente, se considera como legal el interés que fije la Oficina del Comisionado de Instituciones Financieras. Art. 1169 del Código Civil de 2020, 31 LPRA sec. 9333.
[6] Íd., págs. 123-124.

que el Juez introduzca cuantas modificaciones y correcciones aconseje en equidad".[7]

### B. El interés de 6%

Vda. de Seraballs v. Abella Hernández, 90 DPR 368 (1964), es el precedente que se invocó para establecer el origen e imposición del factor de 6% para calcular el valor presente. Ese caso no trata sobre la conmutación del usufructo viudal, sino sobre una indemnización por daños y perjuicios. Allí, se aplicó una tasa de descuento de 6%, proveniente del valor menor en una tabla actuarial, para determinar el valor presente de los daños materiales y morales que sufrieron las demandantes. En ese caso se utilizó **la tasa de 6% para calcular el valor presente** de cierto lucro cesante. Es decir, se tomó el ingreso anual estimado y se multiplicó por el factor de la tabla actuarial que establece el valor —en ese entonces— de un dólar por año, durante los años de expectativa de vida del cónyuge supérstite, tomando el valor menor en la tabla actuarial, que era el 6%. Según mencionamos, esa tasa de descuento que opera para determinar el valor presente no se debe confundir con la tasa de rédito a base de la cual se obtiene la renta anual del usufructo.

Ahora bien, más adelante, en Vda. de Giol v. Giol García, 98 DPR 227 (1969), este Tribunal resolvió una controversia relacionada con la conmutación de la cuota viudal usufructuaria. En ese caso, se determinó expresamente que el principal del usufructo viudal debe producir una **renta anual a**

---

[7] Calimano Díaz v. Rovira Calimano, supra, pág. 710 (citando a J. L. Mezquita del Cacho, Conmutación del usufructo viudal común, 15 Rev. Der. Not. 213, 292 (1957)).

**razón de 6%**. Además, se citó el precedente de <u>Vda. de Seraballs v. Abella Hernández</u>, supra, para disponer cómo procedía calcular el valor actual o presente de la renta anual. Particularmente, dijimos que el valor en efectivo de la cuota usufructuaria se debía determinar:

> [D]e acuerdo con una fórmula que parta de la base de que el principal del usufructo es de $31,418.34 (en el supuesto de que esa sea la cuantía correcta de dicho principal) según lo determinó el tribunal de instancia, y de que **este principal deba producir una renta anual, a razón de 6%**, ascendente a $1,885.10. Entonces procede calcular el valor actual de esa renta como lo hicimos en <u>Vda. de Seraballs v. Abella Hernández</u>, 90 DPR 368, 370 (1964) para determinar el capital efectivo a pagar por dicha cuota usufructuaria de la recurrente.[8]

Como vemos, en <u>Vda. de Giol v. Giol García</u>, supra, explicamos la fórmula para determinar la cantidad de dinero a pagarse por razón de la conmutación de un usufructo viudal. Así, señalamos que la fórmula implica seguir los pasos siguientes: (1) calcular el principal del usufructo, (2) calcular la renta anual de ese principal a razón de un 6%, y (3) calcular el valor actual de esa renta anual, según se hizo en <u>Vda. de Seraballs v. Abella Hernández</u>, supra. De esta manera, resolvimos que la renta anual del principal del usufructo viudal se computa a base de un factor de rédito de 6%. En otras palabras, se estableció, de manera uniforme y general, que la cuota viudal usufructuaria devenga -para efectos de la capitalización- un rédito fijo de 6%.

Posteriormente, en <u>Calimano Díaz v. Rovira Calimano</u>, supra, validamos nuevamente el cálculo a raíz del 6% anual como rédito para conmutar la cuota del cónyuge supérstite.

---

[8] <u>Vda. de Giol v. Giol García</u>, supra, pág. 234 (Énfasis suplido).

### C. El interés legal de la OCIF

La Regla 44.3 (a) de Procedimiento Civil, 32 LPRA Ap. V, R. 44.3, dispone que en toda sentencia que ordene el pago de dinero se incluirán intereses al tipo que fije por reglamento la Junta Financiera de la OCIF y que esté en vigor al momento de dictarse la sentencia. Respecto a cómo se fijará el interés, la referida disposición provee que la tasa se revisará periódicamente y tomará en consideración las fluctuaciones del mercado. Además, la regla señala que los objetivos de tal interés son: (1) desalentar las demandas frívolas, (2) evitar la posposición irrazonable en el complimiento de las obligaciones existentes, y (3) estimular el pago de las sentencias en el menor tiempo posible.

Cónsono con lo anterior, la Junta Financiera de la OCIF promulgó el Reglamento 78-1 con el fin de fijar la tasa de interés a pagarse sobre la cuantía de las sentencias judiciales, según dispone la Regla 44.3 de Procedimiento Civil, <u>supra</u>. Este dicta que la OCIF calculará y certificará cada seis (6) meses las tasas de interés correspondientes tomando en consideración las fluctuaciones del mercado. La exposición de motivos del Reglamento nos explica que, según lo requiere la Regla 44.3 de Procedimiento Civil, <u>supra</u>:

> [Se] fijará la tasa de interés pagadera sobre la cuantía de toda sentencia (incluyendo costas y honorarios de abogado) considerando las fluctuaciones en el mercado y **con el propósito de desalentar pleitos frívolos e incentivar el pago de las sentencias.** Este mandato legislativo solo se cumple **añadiendo un "margen punitivo"** al costo de fondos para el deudor por sentencia, de manera que la tasa resultante mueva a dicho deudor al pago de la misma. (Énfasis suplido).

Como vemos, el interés legal que establece la OCIF se impone como medida punitiva para el deudor que evade el pago de la cuantía de una sentencia judicial. Su finalidad es conseguir que las personas paguen a la brevedad posible lo que adeudan por mandato judicial. Por su naturaleza, no es un interés legal que se utiliza para calcular la cuantía de las sentencias en sí.

### D. La doctrina de stare decisis

La doctrina de *stare decisis* establece que, como norma general, un tribunal debe acatar sus decisiones anteriores en los casos que resuelva posteriormente. Su propósito es "lograr estabilidad y certidumbre legal". Pueblo v. Díaz León, 176 DPR 913 (2009); véase también Payne v. Tennessee, 501 U.S. 808, 827 (1991) ("*Stare decisis* is the preferred course because it promotes the evenhanded, predictable, and consistent development of legal principles, fosters reliance on judicial decisions, and contributes to the actual and perceived integrity of the judicial process"). Ahora bien, "esa doctrina no llega al extremo de declarar que la opinión de un tribunal tenga el alcance de un dogma que debe seguirse ciegamente aun cuando el tribunal se convenza posteriormente [de] que su decisión anterior es errónea". Pueblo v. Díaz León, supra; Am. Railroad Co. v. Comisión Industrial, 61 D.P.R. 314, 326 (1943). En efecto, hemos identificado tres circunstancias excepcionales que justifican revocar un precedente: (1) si la decisión anterior es claramente errónea; (2) si sus efectos sobre el resto del ordenamiento son adversos, y (3) si la

cantidad de personas que confiaron en esta es limitada. <u>Pueblo v. Díaz León</u>, supra (citando a <u>Pueblo v. Camacho Delgado</u>, 175 DPR 1, 20 n. 4 (2008)).

En el pasado utilizamos la doctrina de *stare decisis* para revocar un precedente por ser "manifestantemente erróneo". <u>González v. Merck</u>, 166 DPR 659, 681 (2006). En ese momento no analizamos las excepciones que admite la doctrina, según las reconocemos ahora; no obstante, en su Opinión de Conformidad el juez Hernández Denton resaltó cada una y explicó que:

> El primer criterio equivale a la exigencia tradicional de que se demuestre lo "manifiestamente erróneo" de la decisión que se revoca. Esto suele demostrarse mediante prueba de que, durante el proceso deliberativo que produjo la decisión del tribunal, no se consideraron detenidamente todos los argumentos que aplican al caso.
>
> De otra parte, el segundo criterio obliga al tribunal a ponderar los efectos jurídicos, morales y sociales de su decisión para determinar si la norma tiene consecuencias indeseadas.
>
> Por último, el tribunal debe examinar el impacto que la norma que se pretende revocar ha tenido sobre la vida del público en general. A estos efectos, la doctrina de *stare decisis* cobra mayor vigor mientras más amplio sea el número de personas que ha confiado en el precedente. Por el contrario, la doctrina admite más excepciones a medida que el grupo afectado por el precedente sea más limitado.[9]

## III

En este caso, no estaba en controversia el método o la fórmula que se utiliza para capitalizar el usufructo viudal. El señor Herrero Dómenech se limitó a cuestionar un elemento particular de esta: usar el interés de 6% para obtener la renta anual. Sostuvo que el Tribunal de Apelaciones resolvió

---

[9] <u>González v. Merck</u>, 166 DPR 659, 688-689 (2006) (Opinión de conformidad del juez Hernández Denton).

correctamente que no corresponde utilizar el interés de 6% para conmutar el usufructo viudal porque no existe fundamento jurídico para ello. No obstante, alegó que el foro intermedio erró al determinar que aplica la tasa de interés legal que establece la OCIF. Argumentó que el interés aplicable se debe ajustar a los valores disponibles en el mercado. Además, planteó que el Tribunal de Apelaciones erró al determinar que la tasa de interés que aplica en este caso es la que estableció la OCIF para el periodo correspondiente a la fecha que se sometió el recurso de *certiorari*. Alegó que de acuerdo con Calimano Díaz v. Rovira Calimano, supra, el interés aplicable debe ser el que corresponde al momento de hacerse la conmutación.

Por su parte, el señor Torres Cubano alegó que el peticionario no demostró ni fundamentó ante los foros inferiores porqué el tribunal debe variar la jurisprudencia vigente en torno al interés en controversia. Sostuvo que la conmutación del usufructo viudal no puede estar sujeta a un mercado financiero variante y ambiguo pues ello limitaría indebidamente el derecho que le corresponde al viudo o viuda por ley. Mencionó que un interés de ese tipo podría variar en un corto plazo como, por ejemplo, desde que se calcula la conmutación hasta que finalmente se liquida la participación usufructuaria del viudo o viuda. Por lo tanto, reitera su posición de que el Tribunal de Primera Instancia actuó correctamente al establecer, conforme al derecho vigente, que

el rédito anual del usufructo viudal es de seis por ciento (6%).

Entiendo que el Tribunal de Apelaciones erró al resolver que para calcular la renta anual del usufructo viudal se tiene que utilizar el interés legal de la OCIF por este representar las fluctuaciones del mercado. Me explico.

Como vimos, el propósito de imponer un interés a las sentencias judiciales es punitivo. La finalidad de ese tipo de interés es incentivar el pago de las sentencias en el menor tiempo posible so pena de acarrear una deuda mayor. Este objetivo es diametralmente distinto al de conmutar el usufructo viudal.

El usufructo viudal es la legítima que la ley vigente separa para el cónyuge supérstite. No es una carga ni un cobro de la herencia, sino que es una parte de esta. Por eso, la renta anual es una cantidad que varía de acuerdo con la cuota en usufructo que le corresponde al cónyuge supérstite, la que a su vez depende de la cuantía del caudal. La finalidad de esta renta es convertir el derecho de usufructo que grava todos los bienes de la herencia a una cantidad de dinero en efectivo anual, de manera que los herederos puedan liquidar la legítima que le corresponde al cónyuge supérstite. Así, para que queden protegidos adecuadamente los derechos del cónyuge supérstite, es razonable que la renta anual se calcule a base de un **rédito fijo** que responda directamente a la realidad del caudal de donde procede.

Debemos recordar que son los herederos quienes eligen cómo satisfacer el derecho del viudo o la viuda y, en su defecto, el tribunal. Art. 765 del Código Civil, supra. En ese sentido, no es correcto afirmar que el cónyuge supérstite 'invierte' su cuota usufructuaria en el mercado para obtener un rendimiento anual, pues no es el cónyuge quien opta por liquidar el derecho de usufructo. Ciertamente, si la capitalización contemplara un interés variable, los herederos pudieran retrasar la conmutación hasta que los valores del mercado financiero bajen para así pagar una cantidad menor. Por eso, calcular la renta anual del usufructo viudal a base de un interés legal variable de acuerdo con las fluctuaciones del mercado según lo propone el señor Herrero Dómenech limitaría indebidamente el derecho del cónyuge supérstite a recibir lo que le corresponde en ley y complicaría enormemente la solución de estos casos en los tribunales.

Por su naturaleza punitiva, no corresponde utilizar el interés aplicable a las sentencias judiciales para calcular la renta anual del usufructo viudal. Este tipo de usufructo se debe conmutar a base de un rédito anual fijo que no esté sujeto a los cambios del mercado financiero. En vista de lo anterior, descarto la propuesta del peticionario, así como el interés legal que adoptó el Tribunal de Apelaciones.

Por otra parte, la jurisprudencia establece y ha reiterado que la renta anual del usufructo viudal se calcula a base de un factor de rédito de 6%. Se trata de una guía bien asentada en nuestro ordenamiento que ha servido como fundamento para

conmutar el usufructo viudal en múltiples casos y a través de varias décadas. Incluso así lo reconoció el peticionario.

Según expuse, al amparo de la doctrina de *stare decisis*, este Tribunal debe abstenerse de variar sus determinaciones anteriores a menos que: (1) sean claramente erróneas, (2) tengan efectos adversos sobre el resto del ordenamiento, y (3) la cantidad de personas que confiaron en estas sea limitada. Este caso no plantea ninguna de esas excepciones. Al contrario, se trata de una norma que la jurisprudencia y los tratadistas han avalado consistentemente y, por consiguiente, ha generado estabilidad y confianza en la comunidad en torno a cómo utilizar el interés en cuestión. El señor Herrero Dómenech no logró establecer cómo esa línea de casos sustenta un error evidente que justifique apartarnos de un precedente tan arraigado en nuestro ordenamiento.

Resalto que el rendimiento anual de la cuota viudal afecta únicamente la capitalización del usufructo viudal. Es decir, la controversia que acabamos de atender no afecta adversamente el resto del ordenamiento jurídico. El rédito del 6% aplica única y exclusivamente a esta fórmula. Ante este cuadro, no considero prudente abandonar una norma que utilizamos y reiteramos hace más de 50 años, a base de la cual se han capitalizado un sinnúmero de cuotas viudales usufructuarias y en la cual las personas han depositado su confianza. Más aún, cuando la Asamblea Legislativa promulgó un nuevo Código Civil

en el que se le reconoce al cónyuge supérstite una legítima en propiedad y no en usufructo como hasta la actualidad.[10]

Por último, según señalamos en <u>Calimano Díaz v. Rovira Calimano</u>, supra, la cuota viudal usufructuaria se debe computar utilizando el valor de los bienes al momento de la conmutación. Como vimos, la renta anual se obtiene a base de ese principal. Por lo tanto, en consideración a que el rédito anual se calcula tomando como base la cuota viudal, el interés se debe aplicar igualmente al momento de la conmutación.

Por los fundamentos anteriores, estoy conforme con la sentencia que emitió este Tribunal.

Maite D. Oronoz Rodríguez
Jueza Presidenta

---

[10] Véase el Título Preliminar y el Art. 1622 del Código Civil de 2020, 31 LPRA sec. 11162.