EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Ángel Manuel Torres Cubano<br><br>Peticionario<br><br>v.<br><br>Sucesión de Miriam Magdalena Domenech Rosado, compuesta por Ismael H. Herrero Domenech<br><br>Recurridos | Certiorari<br><br>2026 TSPR 64<br><br>218 DPR ___ |

Número del Caso: CC-2025-0226

Fecha: 11 de junio de 2026

Tribunal de Apelaciones:

Panel Especial

Representante legal de la parte peticionaria:

Lcda. Elena Quintero García

Representantes legales de la parte recurrida:

Lcdo. José R. Dubón Arraiza
Lcdo. Manuel Fernández Mejías

Materia: Derecho Administrativo; Procedimiento Civil - Jurisdicción del Tribunal de Apelaciones para atender un recurso de revisión judicial relacionado a una determinación administrativa parcial con finalidad para una de las partes; aplicabilidad de la Regla 42.3 de Procedimiento Civil al ámbito administrativo.

Este documento está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal Supremo. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Ángel Manuel Torres Cubano

     Peticionario

         v.               CC-2025-0226     Certiorari

Sucesión de Miriam Magdalena
Domenech Rosado, compuesta por
Ismael H. Herrero Domenech

     Recurridos

Opinión del Tribunal emitida por el Juez Asociado señor Kolthoff Caraballo

En San Juan, Puerto Rico, a 11 de junio de 2026.

Hoy tenemos la oportunidad de aclarar el proceso de la administración de herencias desde que el caudal relicto se encuentra en su estado yacente hasta que este se liquide. Es decir, desde que fallece el causante hasta que se distribuyan los bienes del caudal relicto a los herederos. Específicamente, examinaremos el cómputo del total del caudal a ser distribuido y las deducciones aplicables a las partidas de los herederos. Además, resaltamos las obligaciones contributivas e informativas que el Código de Rentas Internas, *infra*, le impone a los miembros de las sucesiones. Aclaramos que, aunque los aspectos contributivos examinados aquí se aplican a una Cuota Viudal Usufructuaria, normativa establecida por el

Código Civil del 1930, *infra*, y ya derogada con el Código Civil del 2020, Ley Núm. 55 de 1 de junio de 2020, según enmendada, 31 LPRA sec. 5311 *et seq.*, las obligaciones contributivas e informativas impuestas a los miembros de las sucesiones quedaron inalteradas. En general, tenemos la oportunidad de precisar cómo se deben distribuir las cargas contributivas de las sucesiones antes de la liquidación del caudal y, entonces, aclarar el proceso que se debe utilizar para determinar el valor justo del mercado de un caudal de una sucesión al momento de la conmutación o desembolso.

En resumen, reiteramos el principio de que las deudas se tienen que pagar antes de poder heredar. Esto pues, los caudales deben estar libres de todo tipo de deudas antes de poder ser distribuidos. Además, reafirmamos que los administradores de las herencias tienen responsabilidades contributivas e informativas con el Departamento de Hacienda que se deben atender antes de distribuir un caudal relicto. Veamos.

## I

La controversia ante nos tiene origen con el fallecimiento sin testamento de la Sra. Miriam M. Herrero Domenech (señora Herrero Domenech o Causante) el pasado 6 de septiembre de 2011. La señora Herrero Domenech estaba casada, bajo el régimen de separación de bienes, con capitulaciones otorgadas el 26 de agosto de 2002, con el Sr. Ángel Manuel Torres Cubano (señor Torres Cubano), desde el 22 de septiembre de 2002 hasta su fallecimiento. Al momento de fallecer, la Causante no tenía hijos. Por esto, los únicos herederos que

formaron parte de la Sucesión de la Causante fueron su madre, la Sra. Miriam Magdalena Domenech Rosado (señora Domenech Rosado), en calidad de heredera universal, y el señor Torres Cubano, en calidad de Cuota Viudal Usufructuaria por ser el viudo de la Causante.

Luego de unos esfuerzos extrajudiciales infructuosos que buscaban liquidar la Cuota Viudal Usufructuaria, el 28 de mayo de 2015, el señor Torres Cubano entabló una *Demanda* en contra de la señora Domenech Rosado. En el interín de los trámites judiciales de la *Demanda*, el 5 de mayo de 2017, la señora Domenech Rosado falleció. Ismael H. Herrero Domenech (señor Herrero Domenech), único hijo de la señora Domenech Rosado y hermano de la Causante, sustituyó a la señora Domenech Rosado en el pleito, por ser el único heredero colateral preferente de la Causante. Es decir, los herederos de la Causante en este momento eran el señor Herrero Domenech, en calidad de heredero, y el señor Torres Cubano, en calidad de Cuota Viudal Usufructuaria.

Tras varios años, el 21 de junio de 2022, las partes presentaron un *Informe de Conferencia con Antelación a Juicio*, en el que determinaron el inventario del caudal de la Causante. Basado en la información dentro de este informe y los documentos que componen el expediente, las partes estipularon que el caudal estaba compuesto de los siguientes activos:

| Activos en el Caudal | | Valor |
|---|---|---|
| 1 | **50%** de participación en una residencia en la Urbanización las Cumbres, Rio Piedras, Puerto Rico | $92,500 |

| 2 | **100%** del Apartamento 18 en El Falansterio, Puerta de Tierra, San Juan, Puerto Rico | **$50,000** |
|---|---|---|
| 3 | **25%** de participación en una residencia en Romany Park, Rio Piedras, Puerto Rico | **$102,500** |
| 4 | **25%** de participación en el Apartamento #2 del Condominio Atlantic, Luquillo, Puerto Rico | **$37,500** |
| 5 | **6.25%** de participación en una venta de residencia Puigdoller | **$4,101** |
| 6 | **100%** de cuenta de Inversiones en UBS Financial Services | **$269,899.07** |
| 7 | **100%** de fondos en cuenta de cheque en Doral Bank | **$4,100** |
| 8 | **100%** de cuenta de cheques en RG Premier Bank | **$15,304** |
| 9 | **100%** de un vehículo Toyota | **$2,300** |
| 10 | **25%** de participación en una sentencia judicial | **$81,250** |
| 11 | **100%** de cheque de litigio | **$2,907** |
| 12 | **7.75%** de participación en Sociedad Especial Inversiones Cocoher | **Sin valor estipulado** |
| 13 | Venta de activo inmobiliario perteneciente a Inversiones Cocoher | **$679,037.50** |
| 14 | **6.25%** de participación en Corcol Investment | **Sin valor estipulado** |

| | |
|---|---|
| **Total** | **$1,491,399** |

En cuanto a las partidas 12 y 14, el Sr. Ismael H. Herrero Sr., padre de la Causante, era dueño de 31% de la Sociedad Especial Inversiones Cocoher y dueño de 25% de Corcol Investments. Por eso, al fallecer el Sr. Ismael H. Herrero en el 2007, la Causante heredó 7.75% de la Sociedad Especial Inversiones Cocoher y 6.25% de Corcol Investments. Subsecuentemente, la firma Inversiones Cocoher vendió un activo inmobiliario en el 2020 por $10,500,000. Luego de las deducciones aplicables, el ingreso de la Sucesión de la Causante totalizó $679,037.50, como visto en la partida 13.

Entonces, las partes **estipularon** que el valor justo del mercado del total del caudal, al momento de la conmutación, era de $1,491,399.[1] Es decir, el Tribunal de Primera Instancia aceptó que las partes le atribuyeron $150,000.43, en conjunto, al 7.75% de participación de Inversiones Cocoher y al 6.25% de Corcol Investments, ya que son las partes sin valores estipulados en la lista de activos.

Como resultado, el 9 de noviembre de 2023, el Tribunal de Primera Instancia dictó *Sentencia* en la que calculó la Cuota Viudal Usufructuaria correspondiente al señor Torres Cubano. El cómputo se basó en la fórmula establecida por el Artículo

---

[1] La conmutación se refiere a la conversión del derecho de usufructo viudal en el caudal relicto por otros bienes o cuando se desembolsa efectivo para satisfacer la Cuota Viudal Usufructuaria. Es decir, cuando la sucesión para de estar en su estado yacente o transitorio y se satisface la Cuota Viudal Usufructuaria. *Colón Gutiérrez v. Registrador*, 114 DPR 850 (1983); *Clavelo Pérez v. Hernández García*, 177 DPR 822 (2010); *Rosa María Vicioso Tueros de Suárez v. Margarita Odette Suárez Noya y otros*, 2026 TSPR 8, 217 DPR ___ (2026); Artículo 765 del Código Civil del 1930, 31 LPRA ant. sec. 2415 *et seq*.

763 del Código Civil del 1930, 31 LPRA ant. sec. 2413, la cual exige que se multiplique el caudal por 1/3. De esta forma, el Tribunal de Primera Instancia dividió el total del caudal en 3 partes para determinar la base de la Cuota Viudal Usufructuaria.

Ahora bien, hemos establecido que luego de dividir el caudal hay que determinar el valor presente de la base de la Cuota Viudal Usufructuaria.[2] Dicho cálculo se basa en un 6% de interés anual y la expectativa de vida del recipiente, en este caso el señor Torres Cubano.[3] En cuanto a la expectativa de vida, el Tribunal de Primera Instancia utilizó la calculadora viudal digital del Colegio de Notarios de Puerto Rico.[4] Además, el Tribunal de Primera Instancia determinó que el señor Torres Cubano era un varón entre 70 y 75 años. Lo anterior pues, al momento de dictar la *Sentencia*, el señor Torres Cubano tenía 72 años, pero, al momento del fallecimiento de la Causante, este tenía 60 años.[5] Al utilizar el rango de 70-75 años, la tabla del Colegio de Notarios estableció una expectativa de vida de 14.38 años o un valor de 9.456415274 a ser multiplicado para calcular el valor presente de la Cuota Viudal Usufructuaria. Por todo lo anterior, el Tribunal de Primera

---

[2] *Vda. de Seraballs v. Abella Hernández*, 90 DPR 368 (1964); *Calimano Díaz v. Rovira Calimano*, 113 DPR 702 (1983).

[3] *Vda. de Giol v. Giol García*, 98 DPR 227 (1969); *Torres Cubano v. Sucn. Domenech-Rosado*, 206 DPR 787 (2021).

[4] Calculadora Viudal, Colegio de Notarios, Profesor Gerardo Bosques Hernández, http://miperfil.colegiodenotariospr.com/index.php?node=1220 (última visita, 25 de febrero de 2026).

[5] El señor Torres Cubano nació el 25 de diciembre de 1950.

Instancia estableció que la Cuota Viudal Usufructuaria totalizaba **$282,065.77.**

| Cómputo | Valor |
|---|---|
| $1,491,399 x 1/3 | **$497,133** |
| $497,133 x 6% | **$29,827.98** |
| $29,827.98 x 9.456415274 | **$282,065.77** |

Sin embargo, el Tribunal de Primera Instancia redujo la cantidad a favor del señor Torres Cubano, basándose en activos retenidos o rentas recibidas antes del desembolso del caudal. Las deducciones correspondientes fueron las siguientes:

| | Deducciones | Valor |
|---|---|---|
| 1 | 100% del vehículo Toyota | **$2,300** |
| 2 | 100% del balance disponible al fallecimiento de la Causante en la cuenta bancaria de Doral Bank | **$4,101** |
| 3 | 100% del balance disponible al fallecimiento de la Causante en la cuenta bancaria de RG Bank | **$15,304** |
| 4 | 100% de un rembolso del Departamento de Hacienda relacionado a las planillas del 2011 de la Causante | **$8,129** |
| 5 | Parte correspondiente a la Sucesión de la Causante de los gastos de honorarios de abogados del Lic. Juan Rafael González en el litigio contra Correa, Calzada | **$18,750** |
| 6 | Renta mensual asignada a la propiedad de El Falansterio, a | **$59,400** |

| | | |
|---|---|---|
| | base de un canon de $450 mensuales, por once (11) años transcurridos desde la muerte de la Causante | |
| 7 | Renta mensual asignada a la propiedad de Las Cumbres, a base de un canon de $750 mensuales, por once (11) años transcurridos desde la muerte de la Causante | $49,500 |
| 8 | Uso y disfrute del señor Torres Cubano de mitad de la propiedad de Las Cumbres, a base de un canon de $600 mensuales, por once (11) años transcurridos desde la muerte de la Causante | $79,200 |
| 9 | Carga contributiva de la venta de capital por un activo inmobiliario perteneciente a Inversiones Cocoher, a base de la taza de 24% establecida en la contribución alternativa mínima | $162,969[6] |
| Total | | $399,653 |

Por lo anterior, el Tribunal de Primera Instancia determinó que el señor Torres Cubano mantenía un balance **negativo de $116,587.23** con la Sucesión de la Causante.[7] No obstante, el Tribunal de Primera Instancia reconoció unos créditos a favor del señor Torres Cubano que fueron los siguientes:

| Crédito | | Valor |
|---|---|---|
| 1 | | $13,821.72 |

---

[6] Las partes estipularon que la tasa contributiva correspondiente a los ingresos generados por la venta del activo inmobiliario por Inversiones Cocoher era de 24%, basado en la Contribución Alternativa Básica, Sección 1021.02 del Código de Rentas Internas, 13 LPRA sec. 30062. Por esto, al aplicar la tasa, resulta una carga contributiva de $162,969.

[7] El balance negativo de $116,587.23 cuenta con un error aritmético, ya que reducir la partida de $282,065.77 por $399,653 resulta en un balance negativo de $117.587.23.

| | | |
|---|---|---|
| | Pago de hipoteca de apartamento El Falansterio, a base de $104.71 mensuales, por once (11) años desde el fallecimiento de la Causante | |
| 2 | Pago de mitad hipoteca de propiedad Las Cumbres, a base de $577.53 mensuales, por once (11) años desde el fallecimiento de la Causante | $76,233.96 |
| | **Total** | **$90,055.68** |

Luego de aplicar los créditos correspondientes, la Cuota Viudal Usufructuaria del señor Torres Cubano tenía un balance **negativo de $26,531.55.** El señor Torres Cubano presentó una moción de reconsideración sobre dicho dictamen, pero la misma fue denegada.

| Cómputo | Valor |
|---|---|
| Valor Presente de la Cuota Viudal Usufructuaria | $282,065.77 |
| Deducciones Aplicables al señor Torres Cubano | ($399,653) |
| Créditos Aplicables al señor Torres Cubano | $90,055.68 |
| **Resultado** | **($27,531.55)**[8] |

Inconforme, el señor Torres Cubano recurrió al Tribunal de Apelaciones donde alegó que erró el foro primario dos veces en su cómputo de la Cuota Viudal Usufructuaria. Primero, el

---

[8] El Tribunal de Primera Instancia estableció que el señor Torres Cubano tenía un balance negativo con la Sucesión de la Causante de $26,531.55. No obstante, este valor cuenta con un error aritmético, ya que el valor debió ser de negativo $27,531.55.

señor Torres Cubano alegó que el Tribunal de Primera Instancia erró al utilizar la fórmula de un ascendiente y un viudo cuando calculó la Cuota Viudal Usufructuaria, ya que, al momento de la conmutación, o desembolso del caudal, solo estaban presente el hermano de la Causante y el señor Torres Cubano. Además, el señor Torres Cubano alegó que el foro primario erró al atribuirle la totalidad de las deducciones aplicables, como la carga contributiva correspondiente a la venta del activo inmobiliario por Inversiones Cocoher. Sin embargo, el foro apelativo intermedio emitió una *Sentencia* el 8 de noviembre de 2024 en la que confirmó la determinación del Tribunal de Primera Instancia, al no encontrar errores de derecho ni errores matemáticos en el cómputo de la Cuota Viudal Usufructuaria. Es decir, el Tribunal de Apelaciones confirmó que la fórmula utilizada es la adecuada cuando concurre un ascendiente y un viudo al momento del fallecimiento del causante y, además, que se atribuyeron apropiadamente las deducciones aplicables, una siendo la carga contributiva.

Insatisfecho, el señor Torres Cubano solicitó la reconsideración del dictamen y el Tribunal de Apelaciones la acogió. En su *Sentencia en reconsideración* del 4 de febrero de 2025, el Tribunal de Apelaciones ajustó la partida 5 de las deducciones asignadas al señor Torres Cubano. Esto pues la Sucesión de la Causante tenía derecho a $100,000 por concepto de la sentencia aludida en la partida 10 de los activos en el caudal. Sin embargo, ya se le habían restado los honorarios de abogados adeudados por los miembros de la Sucesión de la Causante en la partida 10 de los activos, resultando en un

total de $81,250. Según el Tribunal de Apelaciones, era incorrecto aplicarle el crédito establecido en la partida 5 al señor Torres Cubano, debido a que sería una doble reducción. Por esto, el Tribunal de Apelaciones determinó que se le tenía que añadir los $18,750 a la Cuota Viudal Usufructuaria del señor Torres Cubano y, como resultado, esta mantenía un balance con la Sucesión de la Causante de **negativo $8,784.** No obstante, con respecto a la carga contributiva que el señor Torres Cubano alegó que se le asignó erróneamente, el Tribunal de Apelaciones se limitó a decir que la tasa estipulada de 24%, basada en la contribución básica alterna, era la correcta.

| Ajustes del Tribunal de Apelaciones | Valor |
|---|---|
| Deducciones Aplicables - Inicial | **($399,653)** |
| Deducción Duplicada | **$18,750** |
| Deducciones Aplicables - Revisada | **($380,903)** |
| Cuota Viudal Usufructuaria | **$282,065** |
| Balance del señor Torres Cubano | **($98,838)** |
| Créditos Aplicables | **$13,821 $76,233** |
| **Balance Final** | **($8,784)**[9] |

---

[9] Para llegar a esta partida de negativo $8,784, el Tribunal de Apelaciones usó números redondeados. Primero, redujo las deducciones aplicables de $399,653 a $380,903 por el ajuste de $18,750. Luego, le redujo los $380,903 a los $282,065 de la Cuota Viudal Usufructuaria, sin ajustes, para un balance negativo de $98,838. Entonces, le sumaron a los $98,838 los créditos aplicables al señor Torres Cubano de $90,054 ($13,821 + $76,233).

Inconforme con el dictamen del Tribunal de Apelaciones, el 21 de abril de 2025, el señor Torres Cubano presentó una *Petición de Certiorari* ante este Tribunal. El señor Torres Cubano alegó que erró el Tribunal de Apelaciones al tomar en consideración una partida que no fue estipulada por las partes como parte del caudal, dígase la carga contributiva, y que erró el Tribunal de Apelaciones al atribuirle la totalidad de la carga contributiva.

Expedida la *Petición de Certiorari* y contando con el beneficio de la comparecencia de ambas partes, procedemos a resolver.

## II

### A. Sucesiones, Código Civil del 1930

El Artículo 599 del Código Civil del 1930, 31 LPRA ant. sec. 2081, vigente al momento del fallecimiento de la Causante, establece que una sucesión es la transmisión de los derechos y las obligaciones del difunto a sus herederos; dichas obligaciones y derechos son transmitidos desde el momento de la muerte.[10]

### 1. Herederos Forzosos

El Artículo 736 del Código Civil del 1930, *supra*, establece que serán herederos forzosos:

(1) Los hijos y descendientes legítimos respecto de sus padres y ascendientes legítimos, y los hijos naturales legalmente reconocidos respecto de sus padres y ascendientes naturales o legítimos.

**(2) A falta de los anteriores, los padres y ascendientes legítimos respecto de sus hijos y descendientes legítimos.**

---

[10] *Cabassa v. Registrador*, 116 DPR 861 (1986).

(3) **El viudo o viuda en la forma o medida que establecen los Artículos 761, 762, 763, y 764 de este Código.**[11]

**2. Cuota Viudal Usufructuaria**

El Artículo 761 del Código Civil de 1930, *supra*, establece que el viudo tendrá derecho a **una cuota**, **en usufructo**, igual a la legítima que le corresponda a cada uno de sus hijos o descendientes no mejorados.[12]

Sin embargo, el Artículo 763 del Código Civil del 1930, *supra*, establece que en situaciones que un causante no deja descendientes, pero sí ascendientes, entonces el viudo o viuda **tendrá derecho a 1/3 de la herencia en usufructo.**[13] Para que queden adecuadamente protegidos los derechos del viudo o viuda, **se tomará en consideración el valor de los bienes de la herencia al momento en que se formalice la conversión o conmutación.**[14] Es decir, el valor de los bienes en el caudal relicto se calculará con el valor justo del mercado al momento de hacer el desembolso o la distribución a los herederos para liquidar el caudal y satisfacer la Cuota Viudal Usufructuaria.

**3. Cómputo de la Cuota y Fórmula**

El Artículo 765 del Código Civil del 1930, *supra*, establece que:

> los herederos podrán satisfacer al cónyuge su parte de usufructo, asignándole una renta vitalicia, o los productos de determinados bienes, o un capital en efectivo, procediendo de mutuo acuerdo, y, en su defecto, por virtud de mandato judicial;

---

[11] 31 LPRA ant. sec. 2362.

[12] 31 LPRA ant. sec. 2411.

[13] 31 LPRA ant. sec. 2413.

[14] *Clavelo Pérez v. Hernández García*, *supra*; *Colón Gutiérrez v. Registrador*, *supra*.

mientras esto no se realice, estarán afectos todos los bienes de la herencia al pago de la parte de usufructo que corresponda al cónyuge viudo.[15]

Hemos reiterado que, para el cómputo de la Cuota Viudal Usufructuaria, se debe usar la fecha del fallecimiento como base.[16] Es decir, para determinar una Cuota Viudal Usufructuaria entre un ascendiente y un viudo, primero se debe dividir el caudal entero en tres partes, según lo establece el Artículo 763, *supra*. Luego, se debe multiplicar esa cantidad por una base de 6% de interés anual.[17] Entonces, la cantidad que resulte de la fórmula antes descrita debe multiplicarse con un valor determinado por una tabla actuarial, basándose en la expectativa de vida del usufructuario. Por esto, este Tribunal ha expresado que, para determinar la expectativa de vida del usufructuario, se debe tomar en consideración la vida desde la fecha del fallecimiento del causante.[18]

No obstante, este Tribunal ha determinado que, cuando se trata de liquidaciones de caudales hereditarios, rige el principio de pagar antes de heredar.[19] Es decir, antes de desembolsar cualquier partida relacionada a la Cuota Viudal Usufructuaria, primero hay que pagar todas las deudas, ya que, hasta que no se paguen las deudas del caudal, los herederos no

---

[15] 31 LPRA ant. sec. 2415.

[16] *Vda. de Giol v. Giol García*, *supra*; *Vda. de Seraballs v. Abella Hernández*, *supra*; *Calimano Díaz v. Rovira Calimano*, *supra*.

[17] *Torres Cubano v. Sucn. Domenech-Rosado*, *supra*.

[18] *Calimano Díaz v. Rovira Calimano*, *supra*. Véase Efraín González Tejera, *Derecho Sucesorio Puertorriqueño de Sucesiones*, V. I, 1983, pág. 98; Juan Muñiz Belbrú, *Herencia: El Usufructo Viudal*, 1997, pág. 98; Efraín González Tejera, Derecho de sucesiones, T. I: La sucesión intestada, 2001, pág. 122.

[19] *Island Holdings v. Sucn. Hernández Ramírez*, 201 DPR 1026 (2019).

tienen derecho preferente sobre parte alguna de la herencia.[20] Por esto, **la partida inicial para el cómputo de la Cuota Viudal Usufructuaria debe estar libre de todo tipo de deudas.**

## B. Código de Rentas Internas

En Puerto Rico, el sistema contributivo se rige por las reglas establecidas en la Ley Núm. 1 de 31 de enero de 2011, mejor conocida como el *Código de Rentas Internas de Puerto Rico de 2011*, 13 LPRA sec. 30011 *et seq.* (Código de Rentas Internas). Esta ley atiende las responsabilidades contributivas de individuos, sociedades, corporaciones, sucesiones, entre otras entidades.

### 1. Contribuciones de Sucesiones

La Sección 1083.01(a) del Código de Rentas Internas, *supra*, establece que las contribuciones impuestas a individuos **aplicarán al ingreso de sucesiones** o fideicomisos, incluyendo:

(1) ingreso acumulado en fideicomiso para beneficio de personas no nacidas, personas no determinadas o personas con posibles derechos, e ingreso acumulado o conservado para distribución futura bajo los términos del testamento o del fideicomiso;

(2) ingreso que ha de ser distribuido corrientemente por el fiduciario a los beneficiarios, e ingreso cobrado por el tutor de un menor que ha de ser conservado o distribuido según se ordenare por un tribunal;

(3) **ingreso recibido por sucesiones durante el período de su administración o liquidación**; y

(4) ingreso que a discreción del fiduciario puede ser o distribuido a los beneficiarios o acumulado.[21]

---

[20] *Ruiz v. Ruiz*, 74 DPR 347, 351 (1953); Cautiño, Ex parte; Sucn. Llera, etc., Opositores, 51 DPR 475 (1937).

[21] 13 LPRA sec. 30411.

La Sección 1032.03(a)(1)(A) del Código de Rentas Internas, *supra*, establece que los ingresos brutos recibidos por concepto de un finado, que no sean incluibles en el periodo contributivo del fallecimiento o un periodo anterior, serán atribuidos a **la sucesión del causante, si el derecho a recibir el monto fuere adquirido por la sucesión del finado.**[22]

La Sección 1032.03(a)(2) del Código de Rentas Internas, *supra*, establece que cuando hay ingresos generados por ventas u otra disposición sobre propiedad recibida del finado, esto **se incluirá en el ingreso bruto de la sucesión para el período contributivo en que ocurra el traspaso.**[23]

La Sección 1083.01(b) del Código de Rentas Internas, *supra*, establece que la contribución deberá computarse sobre el ingreso neto de la sucesión y deberá pagarse por el fiduciario.[24]

La Sección 1061.09(a)(1) del Código de Rentas Internas, *supra*, establece que toda sucesión rendirá una planilla anual, en la que hará constar las entradas y desembolsos que hagan parte del ingreso bruto de la sucesión.[25] La Sección 1061.09(b)(1) del Código de Rentas Internas, *supra*, establece que dichas planillas se deben radicar antes del 15 de abril

---

[22] 13 LPRA sec. 30113.

[23] 13 LPRA sec. 30113.

[24] 13 LPRA sec. 30411.

[25] 13 LPRA sec. 30249.

del año siguiente al cierre de año en que se generaron los ingresos.[26]

**2. Contribuciones de Sociedades Especiales – Entidad Conducto**

La Sección 1114.02 del Código de Rentas Internas, *supra*, establece que una sociedad especial puede acogerse a las disposiciones establecidas en el Subcapítulo D, Sociedades Especiales y Socios (Secciones 1114.01 - 1114.28), y no estará sujeta a la contribución sobre ingresos como es requerido a las corporaciones.[27] Por esto, estas sociedades se consideran entidades conducto. En este caso, se les asignará a los socios los ingresos distribuibles correspondiente a su participación en la sociedad especial. Es decir, en Puerto Rico, las sociedades especiales son consideradas entidades conducto que no tributan por sí solas, sino que se les atribuye a los socios la porción correspondiente de los ingresos o pérdidas, basado en el acuerdo de la sociedad, y, entonces, los socios son responsables por las cargas contributivas.[28]

La Sección 1114.23 del Código de Rentas Internas, *supra*, establece que en el evento de que un socio muera, su porción será considerada como ingreso con respecto a los finados como establecido en la Sección 1032.03, *supra*.[29] Es decir, la sucesión o la persona con derecho a la porción del finado es considerada como el socio para propósitos de ingresos.

---

[26] Id.

[27] 13 LPRA sec. 30552.

[28] 13 LPRA sec. 30041.

[29] 13 LPRA sec. 30573.

### 3. Contribución Alternativa Mínima, Ganancia de Capital

La Sección 1021.01 del Código de Rentas Internas, *supra*, establece que:

> se impondrá, cobrará y pagará sobre el ingreso neto de todo individuo en exceso de las exenciones dispuestas en la Sección 1033.18 y sobre **el ingreso neto de una sucesión** o de un fideicomiso en exceso del crédito establecido en la Sección 1083.03, una contribución determinada.[30]

La Sección 1083.03 del Código de Rentas Internas, *supra*, establece que para fines de la contribución impuesta por la Sección 1021.01 se concederá a una **sucesión** un crédito de mil trescientos (1,300) dólares contra el ingreso neto.[31]

La Sección 1023.02 del Código de Rentas Internas, *supra*, establece una contribución especial de 15% para individuos, sucesiones y fideicomisos sobre las ganancias netas en ventas de capital a largo plazo.[32] Por otro lado, la Sección 1021.02(2)(A) del Código de Rentas Internas, *supra*, establece que se podrá pagar una tasa preferencial, conocida como una contribución básica alterna, sobre los ingresos generados que estén sujetos a la Sección 1031.01.[33] El contribuyente escoge si desea que le apliquen las tasas ordinarias o las preferenciales descritas en la Sección 1021.01 y 1021.02.

---

[30] 13 LPRA sec. 30061.

[31] 13 LPRA sec. 30413.

[32] 13 LPRA sec. 30082.

[33] 13 LPRA sec. 30062. La Sección 1031.01 del Código de Rentas Internas, 13 LPRA sec. 30101, define todo tipo de fuente de ingreso. Es decir, cuando uno utiliza la contribución básica alterna, uno no solo incluye el ingreso ordinario, sino todo tipo de ingreso como ganancias de capital, entre otras cosas.

El Código de Rentas Internas establece las siguientes tasas ordinarias correspondientes a las contribuciones sobre ingreso ordinario, de acuerdo con la Sección 1021.01, para los años contributivos comenzando luego del 31 de diciembre de 2012:

| Si el ingreso neto sujeto a contribución fuere: | La contribución será: |
|---|---|
| No mayor de $9,000 | 0% |
| En exceso de $9,000 pero no mayor de $25,000 | 7% del exceso sobre $9,000 |
| En exceso de $25,000 pero no mayor de $41,500 | $1,120 más el 14% del exceso sobre $25,000 |
| En exceso de $41,500 pero no mayor de $61,500 | $3,430 más el 25% del exceso sobre $41,500 |
| En exceso de $61,500 | $8,430 más el 33% del exceso sobre $61,500 |

El Código de Rentas Internas establece que las tasas correspondientes a la contribución básica alterna, de acuerdo con la Sección 1021.02, para los años contributivos comenzando luego del 31 de diciembre de 2018 son las siguientes:

| Si el ingreso neto sujeto a contribución básica alterna fuere: | La contribución será: |
|---|---|
| En exceso de $25,000 pero no mayor de $50,000 | 1% |
| En exceso de $50,000 pero | 3% |

| no mayor de $75,000 | |
|---|---|
| En exceso de $75,000 pero no mayor de $150,000 | 5% |
| En exceso de $150,000 pero no mayor de $250,000 | 10% |
| En exceso de $250,000 | 24% |

### 4. Contribución de Caudal Relicto

La Sección 2021.01 del Código de Rentas Internas, *supra*, establece que el Departamento de Hacienda impondrá una contribución de 10% sobre la transferencia del caudal relicto tributable de todo causante de Puerto Rico, si el fallecimiento ocurre después del 31 de diciembre de 2010, pero antes del 1 de enero de 2018.[34] La Sección 2021.02(b) del Código de Rentas Internas, *supra*, establece que el administrador de la sucesión está obligado a retener los recursos necesarios para pagar las contribuciones ante el Departamento de Hacienda antes de entregar o traspasar cualquier bien en el caudal.[35]

La Sección 2022.01 del Código de Rentas Internas, *supra*, determina que el valor del caudal relicto será el valor justo en el mercado de los activos a la fecha del fallecimiento.[36] No obstante, la Sección 2023.01 del Código de Rentas Internas, *supra*, permite que se tomen ciertas deducciones sobre el total

---

[34] 13 LPRA sec. 31011.

[35] 13 LPRA sec. 31012.

[36] 13 LPRA sec. 31021.

del caudal.[37] Estas deducciones incluyen, pero no se limitan a, el valor de ciertas propiedades en Puerto Rico, deudas personales del causante, hipotecas vigentes sobre propiedades incluidas en el caudal, gastos fúnebres, entre otras cosas.

La Sección 2030.01 del Código de Rentas Internas, *supra*, establece que se le impondrá una contribución a los caudales relictos de causantes no residentes que fallezcan en Puerto Rico y, además, determina que, si las contribuciones correspondientes no son pagadas en el término establecido por ley, los herederos serán responsables personalmente por las contribuciones.[38]

La Sección 2051.01(a) del Código de Rentas Internas, *supra*, establece que el administrador del caudal relicto deberá rendir planillas al Departamento de Hacienda dentro de los 9 meses siguientes al fallecimiento del causante.[39] La Sección 2051.06(a)(1) del Código de Rentas Internas, *supra*, establece que las contribuciones impuestas a los caudales relictos deben ser pagadas dentro de 9 meses inmediatamente siguientes a la fecha del fallecimiento del causante.[40]

**5. Intereses Sobre Deficiencias o Falta de Pago**

La Sección 6030.01 del Código de Rentas Internas, *supra*, establece que el Departamento de Hacienda cobrará 10% adicional, contabilizado anual, al monto de la deficiencia desde la fecha de prescripción del pago hasta que la deficiencia

---

[37] 13 LPRA sec. 31031.

[38] 13 LPRA sec. 31061.

[39] 13 LPRA sec. 31121.

[40] 13 LPRA sec. 31126.

sea tazada, en casos de deficiencias.[41] Además, la Sección 6030.02(a)(1) del Código de Rentas Internas, *supra*, establece que se le cobrará en concepto de intereses contributivos un 10% adicional, contabilizados anual, a montos no pagados, desde la fecha prescrita para su pago hasta que se haga el pago.[42]

## III

De entrada, luego de una evaluación exhaustiva del expediente, es evidente que la carga contributiva solo se le atribuyó a un miembro de la Sucesión de la Causante, el señor Torres Cubano. Lo cual, según expusimos en la normativa aplicable, es contrario a derecho. Además, erraron los foros *a quo* al considerar la carga contributiva como una deducción que se aplica **después** de determinar la Cuota Viudal Usufructuaria, ya que la deuda es de la Sucesión de la Causante y se debe pagar **antes** de cualquier distribución. Finalmente, los tribunales recurridos erraron en el rango de edad del señor Torres Cubano que utilizaron con el fin de calcular la expectativa de vida y, subsecuentemente, el valor presente del usufructo. Lo anterior se debe a que, para calcular una Cuota Viudal Usufructuaria, se toma como punto de partida la edad del usufructuario al fallecimiento del causante y no al momento de la conmutación o distribución de los bienes en el caudal.

Como establecido en los hechos, la controversia principal del presente caso se centra en la liquidación de la Cuota Viudal Usufructuaria del señor Torres Cubano. Las partes

---

[41] 13 LPRA sec. 33071.

[42] 13 LPRA sec. 33072.

estipularon que la cantidad total del caudal de la Causante era de $1,491,399. Sin embargo, uno de los activos en el caudal contaba con una carga contributiva de $162,969. Lo anterior se debe a que la Sucesión de la Causante es dueña de 7.75% de la Sociedad Especial Inversiones Cocoher y esta vendió un activo inmobiliario en el 2020, por lo cual, luego de las deducciones aplicables, le correspondía un ingreso de $679,037.50. Utilizando la tasa contributiva de 24%, **la Sucesión de la Causante tienen una deuda contributiva de $162,969 por la venta del activo inmobiliario.**[43] No obstante, aunque la Sucesión de la Causante estaba compuesta por el señor Herrero, en concepto de heredero, y el señor Torres Cubano, en concepto de Cuota Viudal Usufructuaria, los foros *a quo* **incorrectamente le adjudicaron la totalidad de la carga contributiva al señor Torres Cubano.**

Para exponer los fundamentos de nuestra determinación debemos, en primer lugar, abundar sobre el cómputo del total del caudal. Como establecimos, las sucesiones transmiten todos los derechos y obligaciones del causante desde el momento del fallecimiento. No obstante, el Código de Rentas Internas establece que el administrador de las sucesiones deben llenar una planilla anual donde detallen los ingresos generados por activos en el caudal y reportar los desembolsos hechos con recursos del caudal.[44] Como resultado de lo anterior, el administrador de una sucesión tienen la obligación de incluir

---

[43] 13 LPRA sec. 30062.

[44] Sección 1083.01(a) del Código de Rentas Internas, 13 LPRA sec. 30411; Sección 1061.09(a)(1) del Código de Rentas Internas, 13 LPRA sec. 30251.

los activos y pasivos del caudal, así como los movimientos de efectivo a nombre del caudal, para poder atribuirle a los miembros de la sucesión sus partidas correspondientes. Además, el administrador de la sucesión tiene la responsabilidad de pagar las contribuciones sobre los ingresos generados por los activos del caudal y se le asigna un número de contribuyente a la sucesión.[45] Por esto, para poder hacer un cómputo apropiado del valor total del caudal, se deben sustraer todo tipo de deudas, incluso las contributivas, y se debe determinar el valor justo del mercado de los activos que componen el caudal al momento de la conmutación.[46]

Entonces, aunque es cierto que el ingreso que causó la deuda contributiva viene de una Sociedad Especial y que el Código de Rentas Internas clasifica a estas como entidades conducto, quien recibe el ingreso es la sucesión, no los miembros individuales que la componen.[47] Por esto, como establecido por el Código de Rentas Internas, **el administrador de la sucesión es responsable de reportar los ingresos de los activos en el caudal y pagar las contribuciones correspondientes**.[48] Además, según mencionamos, el señor Torres Cubano mantuvo control de un número de propiedades que devengaban ingresos por vía de rentas. Estos ingresos debieron ser incluidos en las planillas anuales de la sucesión desde el

---

[45] Sección 1032.03 del Código de Rentas Internas, 13 LPRA sec. 30113.

[46] *Clavelo Pérez v. Hernández García*, *supra*; *Colón Gutiérrez v. Registrador*, *supra*.

[47] Sección 1114.23 del Código de Rentas Internas, 13 LPRA sec. 30573.

[48] Sección 1083.01(a) del Código de Rentas Internas, *supra*.

fallecimiento de la Causante, al igual que el ingreso por la venta del activo inmobiliario en el 2020. **Sin embargo, no hay documentos en el expediente que determinen si se sometieron las planillas de la Sucesión de la Causante y, subsecuentemente, si se pagaron las contribuciones correspondientes.**

Además, nos encontramos con un fallecimiento que ocurrió el 6 de septiembre de 2011. Es decir, **a este caso le aplica la tributación de 10% que le impone el Código de Rentas Internas a los caudales relictos de causantes que fallecieron entre el 31 de diciembre de 2010 y el 1 de enero de 2018.**[49] Aunque las partes acordaron que hubo un desembolso del Departamento de Hacienda en el 2012 por planillas del 2011, detallado en las deducciones aplicadas al señor Torres Cubano, las partes no presentaron las planillas sometidas para probar que el desembolso fue por las planillas del caudal o por las planillas de ingresos de la Causante, debido a ingresos generados en el año de su fallecimiento. Si la deuda no se pagó, esta puede estar pendiente ante el Departamento de Hacienda.

Como corolario de lo anterior, reiteramos que las herencias pueden crear cargas contributivas en contra de los bienes que componen el caudal de la sucesión. Por esto, **cuando surge una obligación contributiva por ingresos devengados por activos de una herencia mientras esta se encuentra en su administración antes de ser liquidada, la misma se impone sobre los bienes de la sucesión y no a los miembros**

---

[49] Sección 2021.01 del Código de Rentas Internas, 13 LPRA sec. 31011.

**individualmente.** No obstante, en la controversia ante nos, los tribunales *a quo* le adjudicaron la deuda contributiva a un solo miembro de la Sucesión de la Causante, el señor Torres Cubano, y no al caudal de la sucesión, lo cual es contrario a derecho.

Nuevamente, el expediente ante nos no cuenta con documento alguno que pruebe el pago al Departamento de Hacienda por la carga contributiva en controversia. No obstante, las partes estipularon que la tasa de 24%, basada en la Contribución Básica Alterna, aplica al ingreso de la venta del activo.[50] Es decir, las partes acordaron que esa es la tasa correspondiente dada las circunstancias, pero no afirmaron que dicha tasa se pagó al Departamento de Hacienda. Por esto, no se puede determinar que la deuda estipulada fue satisfecha o no por los miembros de la Sucesión de la Causante. Esto es preocupante, ya que el Código de Rentas Internas requiere que el administrador de las sucesiones sometan planillas anuales para el pago de las contribuciones el año que se adeuden y la falta de cumplimiento con dichos requisitos pudiera conllevar penalidades y/o intereses.[51] Esta preocupación se extiende a la obligación de pagar una contribución sobre el caudal relicto, valorizado al momento del fallecimiento del causante, al igual que la deuda contributiva por la venta de capital y otros ingresos generados por el caudal antes de que se liquide el mismo.

---

[50] Sección 1021.02 del Código de Rentas Internas, *supra*.

[51] Sección 6030.01 del Código de Rentas Internas, 13 LPRA sec. 33071; Sección 6030.02(a)(1) del Código de Rentas Internas, 13 LPRA sec. 33072.

Como resultado de lo anterior, enfatizamos que las sucesiones que no han sido liquidadas deben reportar sus ingresos y desembolsos anualmente. Esto incluye rentas, dividendos, ingresos no recurrentes, entre otros. Sin embargo, los miembros de la Sucesión de la Causante no pusieron al tribunal en posición para determinar si la deuda en controversia se pagó. Por esto, tenemos un caudal de una sucesión que carga ingresos de venta de capital, como rentas por propiedades en el caudal, que no se reportaron. Esto afecta el valor del caudal, ya que, de existir cargas contributivas adicionales, estas se deben restar del valor total del caudal de la sucesión **antes de ser distribuido. Al no tomar ese paso en el cálculo de la Cuota Viudal Usufructuaria, el valor del caudal y el valor final de la cuota quedaron alterados.**

Ahora bien, considerando el cómputo matemático, **resaltamos que los tribunales recurridos erraron precisando una variable de la fórmula, ya que utilizaron el rango de edad equivocado para determinar la expectativa de vida del señor Torres Cubano.** Como explicado, este rango de edad se utiliza para descontar el valor de la Cuota Viudal Usufructuaria al valor presente, basado en la expectativa de vida del usufructuario. Al utilizar un rango de edad incorrecto para el señor Torres Cubano, el valor de la cuota queda substancialmente alterado. Además, los tribunales deben ser sumamente cuidadosos al entrar los valores en los procesos aritméticos, ya que esto puede causar errores en los valores finales.

En el caso ante nos, y como surge de los hechos, los tribunales recurridos utilizaron como punto de partida el hecho de que el señor Torres Cubano tenía entre 70 a 75 años al momento de la conmutación para determinar el valor correspondiente en la tabla actuarial. No obstante, debieron utilizar el rango de edad de 60 a 65 años, pues el señor Torres Cubano tenía 60 años al momento del fallecimiento de la Causante.[52] Lo anterior es medular, ya que parte de las deducciones aplicadas al señor Torres Cubano consistían en beneficios recibidos desde la fecha del fallecimiento de la Causante hasta la conmutación.

Conforme con lo anterior, utilizar un número de expectativa de vida incorrecto resulta en un descuento incorrecto de la Cuota Viudal Usufructuaria. Es decir, el señor Torres Cubano recibió unas deducciones por beneficios que recibió entre el fallecimiento de la Causante y la conmutación, pero este tiempo no se contabilizó como parte de la Cuota Viudal Usufructuaria. **Como resultado, el señor Torres Cubano recibió una doble deducción por ese tiempo.** Por esto, este Tribunal ha establecido que, cuando ha pasado un tiempo desde la muerte del causante y la conmutación de la cuota, el administrador tendrá el deber de pagar la porción correspondiente al cónyuge supérstite de los frutos percibidos por el caudal durante ese tiempo.[53]

---

[52] *Calimano Díaz v. Rovira Calimano*, *supra*. Véase Efraín González Tejera, *Derecho Sucesorio Puertorriqueño de Sucesiones*, V. I, 1983, pág. 98; Juan Muñiz Belbrú, *Herencia: El Usufructo Viudal*, 1997, pág. 98; Efraín González Tejera, Derecho de sucesiones, T. I: La sucesión intestada, 2001, pág. 122.

[53] *Calimano Díaz v. Rovira Calimano*, *supra*.

A modo de repaso, los tribunales *a quo* utilizaron una partida inicial errónea, al no restar las cargas contributivas sobre los bienes de la Sucesión de la Causante del valor total del caudal. Además, no consideraron el tiempo desde el fallecimiento de la Causante hasta la conmutación como parte de la Cuota Viudal Usufructuaria adeudada al señor Torres Cubano; es decir, el tiempo desde que la sucesión estuvo en su estado yacente hasta su liquidación. Por eso, los tribunales deben utilizar el mismo proceso aritmético para calcular la Cuota Viudal Usufructuaria, pero antes deben deducir las deudas contributivas del total del caudal y utilizar el rango de edad correcto al determinar la expectativa de vida del señor Torres Cubano para evitar la alteración del valor presente de la Cuota Viudal Usufructuaria a la que el viudo tiene derecho. Finalmente, **los tribunales deben asegurarse de que las deudas contributivas fueron satisfechas antes de distribuir el caudal para evitar cualquier evasión contributiva.**

El Código de Rentas Internas es extenso y complicado, pero sus principios son claros. Las deudas contributivas se deben pagar el año que se adeudan y, además, hay que saldar toda deuda, especialmente las contributivas, antes de liquidar el caudal de una sucesión. Por esto, las deudas contributivas se les atribuyen equitativamente a todos los miembros con derecho a los activos que forman parte del caudal, ya que las deudas son sobre los bienes de la sucesión y no de los miembros en su carácter personal.

Por lo anteriormente expuesto, se devuelve el expediente al Tribunal de Primera Instancia para (1) corroborar que se

hayan radicado las planillas correspondientes al caudal de la Sucesión de la Causante; (2) asegurar que se hayan pagado todas las deudas del caudal, incluyendo las contributivas; (3) hacer una valoración justa del mercado de los bienes del caudal libre de deudas, ajustada al momento de la nueva conmutación; (4) utilizar la edad del viudo al momento del fallecimiento de la Causante para determinar la expectativa de vida requerida para el cómputo de la Cuota Viudal Usufructuaria; (5) calcular el valor de la Cuota Viudal Usufructuaria conforme a los parámetros establecidos; y (6) liquidar el caudal de la Sucesión de la Causante de acuerdo con el proceso detallado anteriormente.

## IV

Por los fundamentos expuestos en la Opinión que antecede, se revoca la *Sentencia* recurrida y se devuelve el expediente al Tribunal de Primera Instancia para recalcular el valor justo del mercado de los activos que forman parte del caudal y para desembolsar las particiones de la herencia de acuerdo con el proceso detallado anteriormente en esta Opinión.

Se dictará sentencia en conformidad.

Erick V. Kolthoff Caraballo
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Ángel Manuel Torres Cubano

    Peticionario

        v.            CC-2025-0226      Certiorari

Sucesión de Miriam Magdalena
Domenech Rosado, compuesta por
Ismael H. Herrero Domenech

    Recurridos

SENTENCIA

En San Juan, Puerto Rico, a 11 de junio de 2026.

Por los fundamentos antes expuestos en la Opinión que antecede la cual se hace formar parte íntegra de la presente, se revoca la *Sentencia* recurrida y se devuelve el expediente al Tribunal de Primera Instancia para recalcular el valor justo del mercado de los activos que forman parte del caudal y para desembolsar las particiones de la herencia de acuerdo con el proceso detallado anteriormente en esta Opinión.

Así lo pronunció, manda el Tribunal y certifica el Secretario del Tribunal Supremo. El Juez Asociado señor Colón Pérez no intervino.

Javier O. Sepúlveda Rodríguez
Secretario del Tribunal Supremo